# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| SANDRA THARP, mother and next friend of KEITH CORDELL, | Case No. 1:05cv550 |
| Plaintiff | District Judge Susan J. Dlott |
| v. | ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER |
| THE BOARD OF EDUCATION OF THE NORTHWEST LOCAL SCHOOL DISTRICT | |
| Defendant | |

This matter comes before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (doc. #3). Plaintiff Sandra Tharp, mother and next friend of Keith Cordell, filed the Complaint for Injunctive Relief and Damages on August 19, 2005, and an Amended Complaint for Injunctive Relief and Damages on August 24, 2005 (doc. # 5). For the reasons set forth below, the Court **GRANTS IN PART** Plaintiff's Motion.

## I.      BACKGROUND

Plaintiff in this case is Sandra Tharp. She has sued as the mother and next friend of her son, Keith Cordell. Defendant in the case is the Board of Education of the Northwest Local School District (the "Board"). Keith Cordell is five years old, and was assigned to begin kindergarten this fall at Pleasant Run Elementary ("Pleasant Run"), a school within the Northwest Local School District (the "District"). Tharp submitted a Request for Student Intra-District Transfer form ("transfer form") to the District for a hardship transfer, requesting that

1

Cordell be transferred from Pleasant Run to Welch Elementary ("Welch"), another elementary school within the District. Tharp sought the transfer because the day care that Cordell attends would provide transportation for Cordell from the day care to Welch, and from Welch back to the day care, while Tharp was working. The transfer form requires the parent or guardian requesting the transfer to check a box indicating the child's race. The form notes that "[t]his information is required by state law because transfers may not contribute to a racial imbalance." Tharp is Caucasian, and Cordell's father is African-American, so Tharp checked the box indicating that Cordell is multiracial.

      Tharp received a form letter dated August 8, 2005, from the Interim Assistant Superintendent of the District, Richard Glatfelter, informing her that her request for a hardship transfer had been denied. The letter listed several reasons why a transfer might be denied, including, among other things, whether the requested school is above or below capacity, whether the grade level enrollment exceeds the approved student/teacher ratio, and whether the student does not meet the eligibility criteria for various reasons. Each reason had a line next to it for a check mark to indicate if that reason applied. Only one reason was checked: that "student does not meet the eligibility criteria for the following reasons...Transfer will adversely effect racial balance of school."

      The Board submits that its decision was in keeping with its Intradistrict Open Enrollment policy ("transfer policy"), which it adopted on February 8, 1993. The Board submits that it adopted that regulation pursuant to the direction of the Ohio Department of Education, and to comply with Ohio Administrative Code § 3301-48-01, and Ohio Revised Code section 3313.97. Section 3313.97(B) provides that each local school district "shall adopt an open enrollment

policy allowing students entitled to attend school in the district . . . to enroll in an alternative school." It further provides that each school district's policy shall provide for, among other things, "[p]rocedures to ensure that an appropriate racial balance is maintained in the district schools." See 33 Ohio Rev. Code § 3313.97(B)(4).

Ohio Administrative Code § 3301-48-01 also provides for intradistrict open enrollment programs. Section 3301-48-01 provides that, by July 1, 1993, each local board of education must adopt an intradistrict open enrollment policy and send a copy to the Ohio Department of Education. It provides further that the policy shall be adopted pursuant to Ohio Revised Code section 3313.97, and must include, among other provisions, "[p]rocedures to ensure that appropriate racial balance is maintained in the district schools." See Ohio Adm. Code § 3301-48-01(B)(d). Section 3301-48-01 also requires the Ohio Department of Education to monitor all school districts participating in intradistrict open enrollment to determine whether each school district's policy and procedures comply with Ohio Revised Code section 3313.97.

Also, in 1980, the Ohio Department of Education issued "A Guide for School Districts on Constitutional Provisions, Assessment Procedures and Monitoring Activities Pertaining to Racial Isolation" (the "Guide"). The Guide advises school districts to "identify those schools in which the ethnic composition of pupils or staff substantially varies from the district average." (See Doc. # 7, Ex. B, p. 10.) The Guide suggests that school districts identify schools having a substantial variation by "utilizing a factor of plus or minus fifteen percent from the district average for pupils." Id. The Guide provides that if assessment reveals a substantial variation that was the "probable result of segregative intent or practices...then the district has an affirmative obligation to eliminate the variation." Id. The Guide provides also, however, that

even if "the assessment reveals that he [sic] substantial variation was not the result of school district actions suggestive of segregative intent, the district still has an obligation to take reasonable action to alleviate substantial racial or ethnic isolation." Id.

The Board submits that, pursuant to the advice of the Guide, and in order to comply with Ohio Revised Code section 3313.97 and Ohio Administrative Code § 3301-48-01, the District monitors schools within the District that have student minority populations which are either 15% above or below the district's overall percentage of minority students. Currently, the District reports that its total student minority population is 25.4%, while Welch, where Cordell wishes to transfer, has a student minority population of 51.6%. The District maintains that since Welch has a minority population more than 15% above the total minority population, and since Cordell is a minority, transferring Cordell to Welch would further upset the racial balance in Welch, contrary to state law.

Plaintiff brings her claim pursuant to 42 U.S.C. § 1983. Plaintiff alleges that the District's transfer policy, Ohio Revised Code § 3313.97(B)(4), and the Ohio Department of Education's regulations at Ohio Administrative Code § 3301-48-01, are unconstitutional. Tharp seeks compensatory damages, a temporary restraining order and a preliminary injunction requiring the District to transfer Cordell to Welch, reasonable attorneys fees and costs, and such other relief as is just and necessary.

The Court conducted a conference with counsel for Tharp and the Board on August 23, 2005. On August 25, 2005, the Court conducted another conference with counsel for the parties and two Assistant Attorney Generals for the State of Ohio. At the hearing, the Court informed the parties that it would issue this temporary restraining order; the parties agreed that the order

would extend until the parties decided to terminate it.

## II.    JURISDICTION AND STANDING

The Court has jurisdiction to consider this case under 28 U.S.C. §§ 1331. Nevertheless, this Court would lack jurisdiction to proceed if Tharp lacks standing to pursue this case.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Thus, this Court must consider Tharp's standing before reaching the merits of her motion.

When a court considers whether a plaintiff has standing to pursue preliminary relief or whether a plaintiff has standing pursuant to a motion to dismiss, standing is determined by analyzing the material allegations in the complaint, which must be accepted as true.  See Okpalobi v. Foster, 190 F.3d 337, 350 (5th Cir. 1999) (courts analyze standing for both motions for preliminary injunction and motions to dismiss based on the material allegations of the complaint); see also Haskell v. Washington Tp., 864 F.2d 1266, 1276 (6th Cir. 1988) (reversing district court's grant of defendant's motion to dismiss on ground that plaintiff lacked standing because allegations in complaint were sufficient to establish standing).

Standing involves two levels of inquiry:  1) whether the plaintiff has shown that a "case or controversy" exists, which can be shown by proving actual injury or injury in fact likely to be redressed by a favorable decision; and 2) whether the plaintiff is the proper proponent of the rights on which the action is based.  See Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati, 822 F.2d 1390, 1394 (6th Cir. 1987).  As Cordell's mother and next friend, Tharp has standing to sue on his behalf.  Tharp has also made sufficient allegations in her complaint that Cordell has suffered an actual injury, that is, deprivation of his constitutional right to equal protection. Tharp thus has standing to pursue this claim.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes the Court to grant a temporary restraining order. When deciding whether to grant preliminary injunctive relief, the Court considers four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of preliminary injunctive relief would cause substantial harm to others; and (4) whether the public interest would be served by issuance of preliminary injunctive relief. See Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000); see also Mason County Medical Ass'n v. Knebel, 563 F.2d 256, 261 (6th Cir. 1977).

### IV. ANALYSIS

#### A. Strong Likelihood Of Success On The Merits

The denial of Tharp's transfer request because Cordell is multi-racial, and because his transfer would upset the racial balance at Welch, implicates Cordell's constitutional right to equal protection. It is well established that all racial classifications made by the government are subject to strict scrutiny under the Equal Protection clause. See Gratz v. Bollinger, 539 U.S. 244, 270 (2003). To withstand strict scrutiny, the Board's consideration of a student's race in its transfer policy must be narrowly tailored to further a compelling government interest. Id.

The Supreme Court recently considered the analogous issue of how race may be used as a factor in university and graduate school admissions. See Grutter v. Bollinger, 539 U.S. 306 (2003); see also Gratz, 539 U.S. at 244. In Grutter and Gratz, the Supreme Court recognized that maintaining a diverse student body is a compelling state interest that can justify the use of race as a factor in admissions. See Grutter, 539 U.S. at 334-35. The Supreme Court is also firm,

however, that racial quotas are impermissible and that race may not be the decisive factor when considering a student's admission. See id.; see also Gratz, 539 U.S. at 271-72. Here, while a prospective transfer student's race is not the only potential consideration under the District's transfer plan, it is nevertheless the determinative factor where a student's transfer would negatively effect the racial balance of the school.

Eisenberg v. Montgomery County Public Schools, 197 F. 3d 123 (4th Cir. 1999), is also instructive here. In Eisenberg, a student appealed the district court's denial of his motion for a preliminary injunction regarding the denial of his transfer request. As is the case here, the student's transfer request was denied solely because it would exacerbate existing racial imbalances in a school. The transfer policy that was examined in Eisenberg was similar to the one here in that it considered whether a potential transfer student's race would cause a further deviation of the requested school's percentage of minority students from the county-wide percentage of minority students. Id. at 126-27. The Fourth Circuit noted that in certain circumstances, as is true with the Board's transfer policy, the County's policy made race the sole determining factor of whether a transfer request was granted. The Fourth Circuit concluded that such racial balancing was not narrowly tailored and therefore could not survive strict scrutiny.[1]

Based upon the Supreme Court's recent decisions, and the persuasive authority of the Fourth Circuit's decision in Eisenberg, the Court finds it likely that on further examination, the Board's policy would not qualify as narrowly tailored. Given this, and given the importance of the rights at stake, the Court finds that Tharp has demonstrated a substantial likelihood of

---

[1] The Fourth Circuit reached this decision without considering the question of whether achieving racial diversity is a compelling government interest, a question which the Supreme Court has since answered affirmatively in Grutter and Gratz. See Eisenberg, 197 F. 3d at 130-31.

success on the merits of her claim. Thus, this factor of the inquiry weighs in favor of granting Tharp's motion for a temporary restraining order. It is important to note, however, that despite this conclusion, the apparent intent of the Board's policy and the state laws in question is not to discriminate against students of any race, but rather to maintain a diverse student body for the benefit of all students.

### B. Irreparable Injury

Because this Court has found that the Board's denial of Tharp's transfer request solely because of Cordell's race threatens his constitutional right to equal protection, the Court must find that Cordell will suffer an irreparable injury if the temporary restraining order does not issue. See ACLU of KY v. McCreary County, Kentucky, 354 F.3d 438, 445 (6th Cir. 2003) (citing Elrod v. Burns, 427 U.S. 347, 373 (1976) (affirming district court's grant of preliminary judgment for plaintiffs who alleged violation of their First Amendment rights)); see also Overstreet v. Lexington-Fayette Urban County Gov't, 305 F.3d 566, 578 (6th Cir. 2002) ("[c]ourts have also held that a plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights.") Thus, this factor of the inquiry weighs in favor of granting Tharp's motion for a temporary restraining order.

### C. Substantial Harm to Others

Because Tharp has shown a substantial likelihood of success on the merits of her claim that the Board's policy is unconstitutional, "no substantial harm to others can be said to inhere in its enjoinment." See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville, 274 F.3d 377, 400 (6th Cir. 2001) (citing Connection Distrib. Co. v. Reno, 154 F.3d 281, 288 (6th Cir. 1998)). Thus,

this factor of the inquiry weighs in favor of granting Tharp's motion for a temporary restraining order.

### D.   Public Interest

"'It is always in the public interest to prevent violation of a party's constitutional rights.'" Id. at 400 (citing G & V Lounge, Inc. v. Michigan Liquor Control Comm'n, 23 F.3d 1071, 1079 (6th Cir. 1994)).  Thus, the public interest factor of the inquiry also weighs in favor of granting Tharp's motion for a temporary restraining order.

### V.   CONCLUSION

Because Tharp has demonstrated a strong likelihood of success on the merits, the other factors to consider in granting a temporary restraining order automatically weigh in her favor. Because Tharp has made sufficient allegations in her complaint to establish standing, and because all four factors to consider in issuing a temporary restraining order weigh heavily in favor of doing so, this Court **GRANTS IN PART** Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (doc. #3).  The Court hereby **ENJOINS** the Board of Education of the Northwest Local School District from enforcing the portion of its Intradistrict Open Enrollment Policy regarding racial balancing when considering Tharp's transfer request.

The Court also **ORDERS** the Board to have the appropriate person reevaluate Tharp's transfer request without considering Cordell's race or the racial balances in Pleasant Run Elementary or Welch Elementary, and notify Tharp of the new decision regarding Cordell's transfer by Sunday, August 28, 2005, so that Keith Cordell may attend the appropriate school on Monday, August 29, 2005.

      IT IS SO ORDERED.

                                                 ___s/Susan J. Dlott_____
                                                 Susan J. Dlott
                                                 United States District Judge